# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2009

Charles R. Fulbruge III
Clerk

No. 08-30618

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

GREGORY J HILL

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:07-CR-50057-01

Before BARKSDALE, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Having been acquitted on two firearm, but found guilty on two controlled-substance, counts, Gregory J. Hill contends: evidence seized from his vehicle should have been suppressed because he did not consent to the search; and an *Allen* charge was coercive and prejudicial. AFFIRMED.

I.

In February 2007, the vehicle Hill was driving was stopped by a Shreveport, Louisiana, police officer for a traffic violation. During this stop, the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

police officer requested (and, as discussed below, received) permission to look in Hill's vehicle. Among the items discovered in the search were crack cocaine and a pistol.

Hill was indicted for, *inter alia*, two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841; possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm during commission of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1). His two-day trial was held in February 2008; after being given an *Allen* charge, a jury found him guilty of the two controlled-substance, but not guilty of the two firearm, charges.

## II.

Hill claims: pursuant to the exclusionary rule, evidence seized from his vehicle should have been suppressed as resulting from a search to which he did not consent; and the *Allen* charge was coercive and prejudicial.

## A.

"The exclusionary rule is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . .'" *United States v. Sibley*, 448 F.3d 754, 757 n.2 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)). "When properly invoked, the rule allows the suppression of the fruits of a search that violates the Fourth Amendment." *Id.* (citing *Leon*, 468 U.S. at 905).

## 1.

A consensual search is, of course, a "well-established exception to the Fourth Amendment's warrant requirement". *United States v. Mata*, 517 F.3d 279, 290 (5th Cir. 2008) (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). Hill maintains: any consent given to the officer was conditioned on his accompanying the officer during the search; and, because Hill was not permitted to do so, the officer did not have his consent to search his vehicle.

2

When reviewing the denial of a suppression motion, conclusions of law are reviewed *de novo*; findings of fact, only for clear error. *E.g.*, *United States v. Pope*, 467 F.3d 912, 915-16 (5th Cir. 2006). Whether consent to search was given is a factual issue; accordingly, the district court's finding consent is reviewed only for clear error. *E.g.*, *United States v. Fierro*, 38 F.3d 761, 771 (5th Cir. 1994). "'A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole.'" *United States v. Brown*, 470 F.3d 1091, 1094 (5th Cir. 2006) (quoting *United States v. Holmes*, 406 F.3d 337, 363 (5th Cir. 2005)).

Prior to the February 2008 trial, Hill moved to suppress the seized evidence. He claimed, *inter alia*, that he did not consent to the search. The parties submitted briefs and waived an evidentiary hearing. The magistrate judge, in August 2007, issued a report and recommendation: recommending, *inter alia*, that Hill gave valid consent; and, recommending denying the suppression motion. Hill filed an objection to this report and recommendation. The district judge, in September 2007, denied Hill's suppression motion, adopting the report and recommendation.

The vehicle Hill was driving was stopped for a traffic violation—a brake light was not working. Video and audio recordings of the traffic stop, and of the subsequent conversation between Hill and the police officer, were made by a recording system in the police car and a body microphone worn by the officer.

At the beginning of the traffic stop, as the officer approached the vehicle on foot, Hill opened the driver's-side door; it remained open for the remainder of the stop. The officer told Hill to remain in the vehicle, explained the reason for the stop, and asked for Hill's driver's license and insurance card. Hill replied that he did not have any identification with him. The officer had Hill step out of the vehicle; patted him down, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968) (permitting law enforcement officers to conduct a pat down of a suspect for officer safety if they have a reasonable suspicion that: a crime has taken, or is

3

about to take, place; and, the subject is armed and dangerous); discovered that Hill was carrying a large amount of money; and, smelled the odor of burnt marijuana emanating from the vehicle.

Because Hill's identity was still not known, the officer placed Hill in the back seat of the officer's vehicle. (Hill was not handcuffed, and he was allowed to keep possession of his cellular telephone.) The following conversation was then recorded by the above-described recording system:

> OFFICER: Is it all right if I look in your car? Hold on let me, hold on.
> HILL: Look in my car? What for?
> OFFICER: Okay, listen to me now okay. Listen to me now, listen to me, is there something in that car that is not supposed to be there?
> HILL: No sir.
> OFFICER: Okay, so you don't have any problem if I look?
> HILL: No, no but can I look when you look? I just want to be right there, you can put the hand cuffs on me and everything, just let me be right there.
> OFFICER: I am not going to let you back out of this car because I don't know who you are, okay.
> HILL: I can tell you who I am.
> OFFICER: Okay let's start out with why are you shaking right now? Because I think that there's something in that car now.

After further conversation about Hill's identity, the officer approached the still-open driver's-side door of Hill's vehicle, while Hill remained in the back seat of the police car.

The officer, upon looking into Hill's vehicle, saw an empty, plastic Ziploc bag—the kind commonly used in drug-dealing activities—in plain view. He showed the bag to Hill, who insisted that he did not know how it happened to be in the vehicle. The officer then returned to the vehicle and found, *inter alia*, crack cocaine in the center console and a pistol in the back-seat area.

Regarding obtaining consent to search, as discussed above, the officer said to Hill: "[S]o you don't have any problem if I look [in the vehicle]"? Hill

4

responded: "*No, no but can I look when you look?* I just want to be right there, you can put the hand cuffs on me and everything, just let me be right there". (Emphasis added.) The district court construed Hill's statement as giving consent, followed by a separate request to accompany the officer during the search. Hill contends his statement is better construed as giving conditional consent, dependent upon his accompanying the officer. In short, Hill challenges whether consent was given.

Hill's above-quoted response to the officer's asking for consent to search provides support for the district court's finding consent. Among other things, Hill did not use the word "if", or other conditional language; and, he did not revoke his consent when the officer refused to permit Hill's accompanying him. There is adequate support for the district court's ruling; accordingly, it did not clearly err in finding this to be a consensual search. Therefore, the denial of Hill's motion to suppress was proper.

### 2.

The magistrate judge's report and recommendation, adopted by the district court, also provided: even without consent, marijuana odor may provide probable cause to conduct a warrantless search. *See*, *e.g.*, *United States v. McSween*, 53 F.3d 684, 686-87 (5th Cir. 1995). The Government urges this as an alternate basis for not suppressing the seized evidence. Because the district court did not clearly err in finding consent, we need not address this issue.

### B.

The phrase "*Allen* charge" originates from *Allen v. United States*, 164 U.S. 492 (1896). It generally refers to a judge's instructions to a seemingly-deadlocked criminal-trial jury, encouraging continuing trying to reach a verdict.

> If a jury is having difficulty reaching a unanimous verdict, it is permissible to instruct it "that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere

acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." [*Allen*, 164 U.S. at 501.] Any similar supplemental instruction that urges members of a deadlocked jury to forego their differences is now known as an "*Allen* charge," or "the dynamite charge, the third degree instruction, the shotgun instruction, or the nitroglycerin charge." *United States v. Bailey*, 468 F.2d 652, 666 (5th Cir. 1972). This "standard supplemental instruction has been well-received by the nation's trial court judges. The charge is used precisely because it works, because it can blast a verdict out of a jury otherwise unable to agree that a person is guilty." *Id.*

*United States v. Fields*, 483 F.3d 313, 338-39 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1065 (2008).

Our court has consistently held that "[d]istrict courts have broad discretion to give *Allen* charges when the jury indicates deadlock". *United States v. Hitt*, 473 F.3d 146, 153 (5th Cir. 2006) (citing *United States v. Rivas*, 99 F.3d 170, 175 (5th Cir. 1996)); *see also United States v. Allard*, 464 F.3d 529, 536 (5th Cir. 2006) (noting the district court has "broad discretion" to evaluate whether an *Allen* charge is coercive). Accordingly, our court typically reviews challenged *Allen* charges for abuse of discretion. *E.g.*, *Fields*, 483 F.3d at 338. This is not so, however, when the challenge to the *Allen* charge was *not* raised in district court; if the defendant failed to object, our review is instead only for plain error. *E.g.*, *Hitt*, 473 F.3d at 153.

Regarding the *Allen* charge, claimed to have been coercive and prejudicial, Hill maintains the wording used by the district judge requires reversal of his conviction. Preliminary to the *Allen* charge, and in the second (last) day of trial, the jury began deliberating at 10:58 a.m. At approximately 1:10 and 2:15 p.m., it sent notes to the district judge, requesting further instruction; the second note included a statement that it was "deadlocked". At approximately 2:35 p.m., the jury sent a third note; it again advised being "deadlocked".

Upon receiving this third note, the district judge and counsel discussed giving an *Allen* charge, encouraging the jurors to continue trying to reach a verdict. The district judge ultimately decided to do so. Hill's objection to this decision was overruled.

At approximately 2:45 p.m., the jurors were brought into the courtroom. The district judge then said to them:

> This may not be what you expected to hear when you came in this door, but look at the clock. It's a quarter to three. I'm paying you guys $40 a day and mileage. I'm going to ask that you go back in there and that you continue your deliberations for a while in an effort to agree on a verdict and dispose of this case. I have a few additional comments.

The district judge then essentially read from the Fifth Circuit's pattern *Allen* charge. Among other things, it reminds the jury that: trials are expensive; failure to reach a verdict results in having to conduct a new trial; there is no reason to believe the case could be tried again better or more exhaustively, or that a future jury might be more able to decide the case; all should consider whether any doubts that they have are reasonable; it is the jury's duty to reach a verdict, if possible; and the Government's failure to establish guilt beyond a reasonable doubt should result in a unanimous verdict of not guilty.

The district judge concluded by saying:

> I'm going to put you on the clock. You have until 4:45 to go back in that jury room and earn the rest of your keep. And you

might go back and read, beginning with the instructions on the four different charges. The fact that you can't agree on all four of the charges, do you agree on one of the charges. If you don't agree on any of the charges, see if you can get together enough to vote unanimously one way or the other so that all of us don't—all of us don't have to come back in here and try this case again.

Give it your best shot. . . . [The lawyers] did a good job. They did what the tradition of lawyers in such a contest are supposed to do.

But somehow if you can reach a unanimous verdict, do so. If you can't and it's a quarter to five, send me a note just like this note you just sent me, and we will send you home.

The jury resumed deliberations at 2:53 p.m.

At 4:15 p.m., the jury reached a verdict. It found Hill guilty of the two controlled-substance, but not guilty of the two firearm, charges.

As noted, Hill objected to the district court's giving an *Allen* charge. On appeal, however, he does not challenge the court's doing so; instead, he challenges portions of the given charge. After the charge was given, the following colloquy occurred between the district judge and Hill's attorney. It demonstrates that the wording currently challenged was *not* objected to in district court:

THE COURT: Are you all right . . . ?
[HILL'S ATTORNEY]: Yes, sir. Although I objected to the charge, I appreciate the way you read it. You changed it a little bit.
THE COURT: I did. I livened it up a little. It's duller than dishwater the way it's written, but it's in the pattern. *But anyway—you still object to having done it, but you like the way it was done; is that it?*
[HILL'S ATTORNEY]: *That's correct.*

(Emphasis added.)

Hill's objection to giving an *Allen* charge is insufficient to preserve a challenge to the wording of that charge. *See Hitt*, 473 F.3d at 153 & n.5 (reviewing for plain error, where "[d]efendants' counsel objected to the reading of an *Allen* charge *in toto* . . . , but neither counsel objected to the charge's

language"). Hill's challenge to the wording of the *Allen* charge, raised for the first time on appeal, is, therefore, reviewed only for plain error. In reviewing for plain error,

> we first determine whether there is "(1) error, (2) that is plain, and (3) that affects substantial rights". [*United States v.*] *Mares*, 402 F.3d [511,] 520 [(5th Cir. 2005)]. Under this narrow standard of review, an error is not "plain" unless it is "clear" or "obvious". *United States v. Olano*, 507 U.S. 725, 734 (1993). *Even if plain error is found to exist, we retain discretion whether to correct it*; generally, we will do so only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings". *Mares*, 402 F.3d at 520.

*United States v. Salazar*, 542 F.3d 139, 147-48 (5th Cir. 2008) (emphasis added), *cert. denied*, 129 S. Ct. 1669 (2009); *see also Allard*, 464 F.3d at 535.

For reviewing the wording of an *Allen* charge, we consider: whether any "semantic deviation from approved *Allen* charges" is "so prejudicial to the defendant as to require reversal"; and, whether "the circumstances surrounding the giving" of the charge are "coercive". *Fields*, 483 F.3d at 339 (internal quotation marks and citation omitted).

> [W]e "review the entire record and the 'totality of the circumstances' surrounding the judge's conduct to 'determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial.'" [*United States v.*] *Sanchez*, 325 F.3d [600,] 603 [(5th Cir. 2003)] (quoting [*United States v.*] *Saenz*, 134 F.3d [697,] 702 [(5th Cir. 1998)]). The judge's conduct rises to the level of a constitutional error only if the conduct, "viewed as a whole, . . . amount[s] to a 'quantitatively and qualitatively' substantial intervention that could have led the jury to 'a predisposition of guilt.'" *Sanchez*, 325 F.3d at 603 (quoting *Saenz*, 134 F.3d at 702).

*United States v. Redd*, 355 F.3d 866, 877 (5th Cir. 2003) ("[c]onsidering the record as a whole", in holding that the *Allen* charge given was not coercive or otherwise improper).

1.

One of Hill's *Allen*-charge contentions is that commentary about trial-related costs was improper. He points, *inter alia*, to the district judge's references to the "$40 a day and mileage" paid to each juror, the salaries of the attorneys, the expense of the United States Marshals, and the overall trial expense.

These comments are substantially consistent with our court's pattern *Allen* charge. The pattern charge instructs the jury that "[t]he trial has been expensive in time, effort, and money to both the defense and the prosecution"; and, "another trial would only serve to increase the cost to both sides". Given the pattern charge's inclusion of trial costs, the district court did not plainly err (commit "clear" or "obvious" error) in referencing the trial costs.

2.

Hill also urges that the district judge's reference to the United States Marshals escorting Hill was improper; he contends the jurors were unaware that he was in custody until this reference. When a defendant's custodial status is referenced, "[i]t is the trial court's function to ensure that jurors do not use [that status] as evidence". *United States v. Mendoza*, 522 F.3d 482, 493 (5th Cir.), *cert. denied*, 129 S. Ct. 269 (2008) (addressing the projection of guilt by arrest, indictment, and the issuance of prison clothing).

The reference to the Marshals—made while focusing the jury's attention, not on Hill's custodial status, but on the trial expense—cannot be said to have been plain ("clear" or "obvious") error. Moreover, any error on the district judge's part was remedied by, *inter alia*, the portion of the *Allen* charge instructing the jury: "[I]f the evidence in the case fails to establish guilt beyond a reasonable doubt, Mr. Hill should have your unanimous verdict of not guilty".

3.

Hill's final *Allen*-charge contention is that the district judge imposed a coercive, impermissible deadline, by instructing the jury: "I'm going to put you on the clock. You have until 4:45 to go back in that jury room and earn the rest of your keep". Hill notes that, in addition to making this comment, the district judge also omitted the following portion of our pattern *Allen* charge: "You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary".

There are numerous examples of our court viewing *Allen* charges as impermissibly coercive when they include time deadlines. As noted, our pattern *Allen* charge instructs jurors to "take all the time which you may feel is necessary". In *United States v. Straach*, our court stated: "[A] judge errs . . . when the instruction . . . set[s] a time limit for the deliberations". 987 F.2d 232, 242 (5th Cir. 1993) (internal quotation marks and citations omitted). In *Fields*, on the other hand, our court held the given *Allen* charge acceptable because, among other things, it did not set a time limit on deliberations. 483 F.3d at 340; *see also United States v. Cheramie*, 520 F.2d 325, 330 & n.7 (5th Cir. 1975).

In this regard, the district judge's time-related condition was arguably an abuse of discretion. Given our court's precedent expressing disapproval for setting time limits, it might even amount to a "clear" or "obvious" error. Assuming *arguendo* there was such an error, but based on this record, it did *not* affect Hill's substantial rights. Moreover, even assuming it did, and as discussed *infra*, it did not "seriously affect[] the fairness, integrity, or public reputation of [this] judicial proceeding[]", *Mares*, 402 F.3d at 520, when, again, the record is reviewed as a whole. *See Redd*, 355 F.3d at 877. Accordingly, we decline to exercise our discretionary power to correct any plain error that occurred. *See Mares*, 402 F.3d at 520.

11

Viewing the given *Allen* charge *in toto*, it largely matches our court's pattern *Allen* charge. In addition, the district judge included mitigating statements, such as "[g]ive it your best shot"; and, "[i]f you can reach a unanimous verdict, do so. If you can't . . . , send me a note". In addition, the jury neither reached its verdict immediately after the charge was given, nor immediately prior to the deadline; its reaching a verdict in between these two extremes supports our view that the jurors were not pressured by the court sufficiently to require reversal under plain-error review.

Similarly, the jury's verdict was a discriminating one. Following the *Allen* charge's being given, and after further deliberation, the jury convicted on two counts and acquitted on two. In *United States v. Heath*, our court construed a similar jury verdict as indicative that the *Allen* charge was not coercive. 970 F.2d 1397, 1406 (5th Cir. 1992) (noting that, despite the jury's convicting on some counts, "the jury's verdict was a discriminating one—after further deliberation, the jury remained deadlocked on two counts and acquitted the Defendants of several others").

Our decision is further buttressed by other instances where the district judge exhibited a friendly, jocular, and yet somewhat blunt style of interaction with the jury. For example, at the end of the first day, before deliberations began on the second, the district judge said to the jury:

> And I would hope that when the clock says 9 o'clock in the morning and I say to the Marshal, [a]re all twelve jurors here, that his answer will be yes. Because we are going to start Johnny-on-the-spot at 9 o'clock. Don't be late. You don't live too far. The furthest guy out there is 53 miles. That's [full name of one juror]. [First name of that juror], 53 miles, can you get here at 9 o'clock without a problem?

At another point, the following exchange took place in the presence of the jury:

[HILL'S ATTORNEY]: Excuse me. It's not really an objection, but I'm willing to stipulate that [the witness] is an expert in drug trafficking investigations. . . .

THE COURT: Now, you see, he really is all right. Ladies and gentlemen, when a person is presented to the jury in the form of an expert witness, it's because of experience . . . . [Hill's attorney] has agreed that the gentleman is qualified to give such testimony, and that saves heaps of time.

These, and other similar exchanges, support the view that the judge had a good rapport with the jury, and that, by the final day of the two-day trial, the jurors would have viewed a statement such as "I'm going to put you on the clock" as reflective of the judge's jocular style; such a statement, when this record is examined as a whole, is not, for plain-error-review purposes, coercive or prejudicial to the extent that we should exercise our discretion and reverse the conviction. *See also Rivas*, 99 F.3d at 174 ("Our affirmance should not be read to approve the procedure used by the district court. However, we are unpersuaded that the procedure prejudiced [the defendant], given the specific circumstances of this case."). Again, any plain error did not taint the deliberations to a degree that, under plain-error review, would require reversal of Hill's conviction.

## III.

For the foregoing reasons, the judgment is AFFIRMED.