United States Court of Appeals
Fifth Circuit

**F I L E D**

September 11, 2006

Charles R. Fulbruge III
Clerk

REVISED SEPTEMBER 14, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-20087

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LINDA GAY ALLARD,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before GARWOOD, KING, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Linda Gay Allard confessed to her crime shortly after she was informed that she had failed a polygraph test. At trial, however, she contended the confession was coerced by the government agent. To counter this contention, the government was allowed to introduce testimony relating to the conduct of the polygraph examination. On appeal Allard challenges her conviction, arguing that the district court erred in admitting this testimony and in giving a modified Allen[1] charge to relieve initial jury deadlock. Because we find the district court did not err as to either, we AFFIRM Allard's conviction.

_____

[1]Allen v. United States, 164 U.S. 492, 501-02 (1896).

Linda Gay Allard contacted her local Wal-Mart store in 2003, complaining that her husband found straight pins in Hillshire Farms summer sausage she had purchased from the store. In addition to contacting Wal-Mart, Allard filed a complaint with the U.S.D.A.'s Food Safety Inspection Service. The U.S.D.A. joined with the United States Secret Service and conducted an investigation of Allard's claim. As a part of the investigation, Secret Service Agent William Wind conducted a polygraph examination with respect to both Allard and her husband. At the conclusion of Allard's polygraph exam, Agent Wind informed Allard that the results indicated she had not been truthful. Allard then gave the following written confession: "I put the pins in the sausage before I left for work on Thursday, December 4, at 3 p.m. I was hoping to get money from Hillshire Farms. I got the pins from the sewing box." Allard told Agent Wind that she and her husband had nearly $60,000 in consumer debt that they were struggling to repay.

Following her confession, the government charged Allard with one count of making a false claim of consumer product tampering in violation of 18 U.S.C. § 1365(c)(1).[2] At a pre-trial bench

---

[2] 18 U.S.C. § 1365(c)(1) states:

> Whoever knowingly communicates false information that a consumer product has been tainted, if such product or the results of such communication affect interstate or foreign commerce, and if such tainting, had it occurred, would create a risk of death or

conference, the district court granted the government's unopposed motion in limine to prohibit the introduction of evidence regarding the fact that Allard "was asked to take and did take a polygraph test or any of the results." After a jury trial, Allard was convicted and sentenced to 366 days of imprisonment and three years of supervised release. Allard filed this timely appeal.

II

On appeal Allard raises two challenges to her conviction: First, she contends that the district court admitted testimony relating to her polygraph examination in violation of Federal Rules of Evidence 702 and 403; and second, she contends that the district court erred in giving the jury a modified <u>Allen</u> charge. We consider each of Allard's challenges in turn.

A

The testimony relating to Allard's polygraph examination was admitted during both the Government's cross-examination of Allard, and Agent Wind's testimony during the Government's rebuttal.

Allard testified on direct examination that her confession was involuntary because it was coerced by Agent Wind. She stated that Agent Wind told her she could not leave until she wrote what he told her to write in her statement; that Agent Wind threatened her by stating that he could take her farm and arrest her at work; that

----

bodily injury to another person, shall be
fined under this title or imprisoned not more
than five years, or both.

3

Agent Wind refused to honor her request for an attorney; that Agent Wind pushed her, shoved her, and told her to sit down and shut up; and that Agent Wind said he could make her children disappear.

Before cross-examining Allard, the government, reversing its earlier position, moved to introduce evidence regarding the polygraph test. The government argued that Allard's "extraordinary allegations" made the polygraph "extremely relevant to the interview" and that evidence regarding the polygraph would "go a long way toward explaining the Government's and Mr. Wind's role in the interrogation." The district court questioned the relevancy of the test because the issue regarding the confession was credibility and the polygraph was simply a "kind of recordation ... of ... pressures and indicators." The government responded that the test was relevant to the progression of events preceding the confession and to the fact that her failure of the polygraph test lent credence to Agent Wind's testimony that he judged her to be deceptive.

Allard objected to the admission of evidence relative to the test, arguing, inter alia, that the government had notice that she would testify that her confession was involuntary. The government responded that it did not know until Allard testified that her assertion of an involuntary confession would include allegations that a federal agent had physically threatened her.

After a recess, the district court read a proposed jury instruction to the parties, which instructed the jury that it could

4

consider statements made by Allard and Agent Wind surrounding the polygraph test to determine those witnesses' credibility, but that the result of the polygraph test was not admissible. Allard argued that the relevance of the test was outweighed by the prejudice to her from its admission because the jury would infer that she had failed the test and further, that evidence regarding the test should not be admitted because there was no evidence that polygraph test results are reliable. The government cited an opinion from another circuit, United States v. Johnson, 816 F.2d 918 (3d Cir. 1987), holding that polygraph evidence could be used to rebut a defendant's assertion of a coerced confession. The district court overruled Allard's objection and subsequently instructed the jury as noted above regarding consideration of the polygraph and statements made surrounding the administration of the polygraph. The government then cross-examined Allard regarding the circumstances surrounding her polygraph test. Furthermore, the Government later called Agent Wind, who administered the polygraph test, as a rebuttal witness. Agent Wind testified that he did not coerce Allard's confession.

1

Allard first contends that the district court's admission of the rebuttal testimony violated Rule 702 because the Government failed to satisfy Rule 702 with respect to relevancy and reliability, and with respect to admissibility under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Under Rule

5

702, expert testimony is admissible if (1) it will assist the trier of fact to understand the evidence or to determine a fact in issue; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case. We review the district court's ruling under Rule 702 for an abuse of discretion. <u>United States v. Pettigrew</u>, 77 F.3d 1500, 1514 (5th Cir. 1996).

The government argues that Allard did not challenge the admission of the polygraph evidence at trial under Rule 702. Allard's counsel, however, did object to the proposed jury instruction on the ground, <u>inter</u> <u>alia</u>, that there was "no consensus that polygraph evidence [was] reliable." Thus, the district court was aware that Allard objected to the introduction of scientific evidence in connection with the polygraph test.

The requirements of Rule 702 and its progeny apply only to testimony offered by one tendered as an expert. <u>See</u> FED. R. EVID. 702. The government did not proffer Agent Wind as an expert. Neither did Agent Wind claim to offer, or actually provide, technical, scientific, or expert testimony. Instead, Agent Wind was called in rebuttal to provide his account of the facts and circumstances surrounding Allard's confession, in an attempt to counter Allard's allegations that her confession was coerced. Accordingly, there was no evidentiary error under Rule 702. Although Agent Wind gave detailed testimony regarding how a

6

polygraph test is administered and the different kind of responses the test measures, Allard never renewed an objection and did not challenge the fact that Agent Wind had not been qualified as an expert. To the extent that she challenges this testimony, we find no plain error. See United States v. Miranda, 248 F.3d 434, 443 (5th Cir. 2001).

The district court instructed the jury that the results of the polygraph test were not admissible and that the admission of statements made by Allard and the person giving the polygraph test were being admitted for the "sole purpose" of assisting the jury in determining whether Allard's confession was voluntary.[3]

---

[3] Just before the Government's cross examination of Allard the district court gave an instruction to the jury, which in relevant part provided:

> In this case, the defendant challenges the truthfulness or the voluntariness of her statement, the statement that was admitted into evidence.
>
> She does not dispute that the statement is her statement. She disputes the circumstances that gave rise to the statement. She challenges, as I said, the voluntariness of her statement. In this case, the rules of evidence permit then the admissibility of testimony that surrounds the giving of the statement.
>
> A polygraph examination was administered to the defendant. The results of that examination are not admissible. However, the statements between the defendant and the person administering the polygraph examination are admissible for the purpose for –– for the sole purpose, I should say, of you determining the defendant's state of mind at the time of

7

the giving of the statement and whether or not that confession or statement was voluntary or not.

It also gives you an opportunity or it is your province to determine the credibility of the witnesses who testify about the circumstances surrounding the giving of a statement. So the circumstances and the statements made at the time are not admitted for the truth of the statements made then.

Repeat that. I'm admitting the statements and permitting you to hear questions and answers about things that were said months ago, not for you to decide whether they were being truthful then, but whether or not the witnesses are being truthful now about what occurred then. That's a little bit of a twist. So think about it a little bit.

So, you, the jury, will have the opportunity to determine the credibility of the defendant and Special Agent Wind's testimony at this trial. It doesn't matter whether it was truthful then. It doesn't matter if they were telling truths or lies. The question is what are they saying now that might contradict or be in conflict with what was said then and can you believe one or both or any of what they have to say now about those events that occurred then. That's why it's being admitted.

Therefore, do not speculate about any matter or matters that are not presented. For example, there will be no evidence presented as it relates to what the outcome of that examination was. You will not get any documents, you will not get any testimony, about the outcome of that examination. You certainly might get testimony about what people said to each other about that examination. That's different. There is no scientific evidence being admitted here. So keep that in mind. So you're not to speculate about any matter or matters that are not

8

The district court clarified that there would be no evidence presented with respect to the outcome of the test, and stated: "There is no scientific evidence being admitted here." Because the the district court instructed the jury that it should consider any polygraph evidence only to determine the credibility of the witnesses and not as scientific evidence, and because we must presume that the jurors followed those instructions, see <u>United States v. Wyly</u>, 194 F.3d 289, 299 (5th Cir. 1999), we cannot say that Wind was proffered, or considered by the jury as an expert. Consequently, Allard's argument that Rule 702 is implicated or offended by the district court's admission of Agent Wind's rebuttal testimony is rejected, and we hold that the district court did not abuse its discretion or err (plainly or otherwise) in admitting this testimony.

2

Allard also argues, with respect to both rebuttal and cross-examination, that the district court admitted evidence relating to the polygraph examination in violation of Rule 403, that is, the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. The district court has broad discretion to weigh the relevance, probative value, and prejudice of the evidence in determining its admissibility under

presented, such as the test results. Your job is determining whether the witnesses involved are being truthful today about past events. That's what your job is.

Rule 403.  United States v. Wilson, 355 F.3d 358, 361 (5th Cir. 2003).  We will not reverse a district court's ruling under Rule 403 absent a clear abuse of discretion.  United States v. Dula, 989 F.2d 772, 778 (5th Cir. 1993) ("The balancing of probative value against prejudicial effect is committed to the sound discretion of the trial judge, a decision that is final in the absence of an abuse of discretion."); United States v. Caldwell, 820 F.2d 1395, 1404 (5th Cir. 1987).

This Circuit has not addressed the admissibility under Rule 403 of testimony relating to a defendant's polygraph examination.  However, we are persuaded by the holdings of other Circuits, finding that testimony concerning a polygraph examination is admissible where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced.  See United States v. Kampiles, 609 F.2d 1233, 1244-45 (7th Cir. 1979); Tyler v. United States, 193 F.2d 24 (D.C. Cir. 1951); see also United States v. Johnson, 816 F.2d 918, 923-24 (3d. Cir. 1987) (citing Kampiles, 609 F.2d 1233).

In Tyler v. United States, the defendant testified that his confession was coerced.  When the government rebutted this claim with the testimony of the polygraph examiner, the defendant moved to strike the examiner's testimony that the defendant was told that the results indicated that the defendant was lying.  193 F.2d at 31.  The D.C. Circuit held that the district court did not violate

Rule 403 in admitting the testimony, noting that the jury was instructed not to consider the testimony as evidence of the defendant's truthfulness, but only as evidence of the voluntariness of the defendant's confession. Id. In United States v. Kampiles, the Seventh Circuit held that the highly probative character of the polygraph evidence as to the voluntariness of the assailed confession sufficiently outweighed any prejudice to the defendant. 609 F.2d at 1244-45. The Seventh Circuit reasoned further that it would be unfair to allow the defendant to attack the confession as involuntary without allowing the Government to demonstrate the context in which that confession was given. Id. at 1244. This reasoning is consistent with our holding in United States v. Thevis, 665 F.2d 616, 637 (5th Cir. 1982) (overruled on other grounds), which upheld the admission of testimony relating to the polygraph examination of a cooperating witness. There we held that Rule 403 was not offended by the admission of such testimony, as it was not admitted to establish the truth of the statements made as a part of the examination, but instead for the limited purpose of proving that the defendant knew the witness was cooperating with the government. Id.[4]

_____

[4] We note that the Ninth Circuit in United States v. Miller, 874 F.2d 1255 (9th Cir. 1989), found the district court had erred in admitting testimony relating to a polygraph examination of the defendant. However, the Ninth Circuit noted that "polygraph evidence might be admissible if it is introduced for a limited purpose that is unrelated to the substantive correctness of the results of the polygraph examination." Id. at 1261 (internal citations omitted). Given this reasoning, we view Miller as

11

As we have said before, "it is well settled that the purpose of rebuttal testimony is to explain, repel, counteract, or disprove the evidence of the Adverse party. . . . [I]f the defendant opens the door to the line of testimony, he cannot successfully object to the prosecution accepting the challenge and attempting to rebut the proposition asserted." United States v. Delk, 586 F.2d 513, 516 (5th Cir. 1978) (internal quotation and citation omitted). This situation is presented in the case at hand. Where a defendant, such as Allard, chooses to contest before the jury the voluntariness of her confession, it is only fair to permit the government, in response, to set the scene of that confession. It is significant, of course, that here the district court specifically instructed the jury that testimony relating to the polygraph was not scientific, that its results were irrelevant to the ultimate issue of truthfulness, and that the evidence was only to be considered in determining whether Allard's confession was voluntary. See supra, n.3. Given these circumstances, Allard has failed to establish that the district court abused its discretion under Rule 403 in admitting testimony relating to her polygraph examination.

B

Allard also argues that the modified Allen charge given by the district court was error as it had an inappropriate coercive effect

limited to the facts in that case.

12

on the jury.  Allard did not object to the <u>Allen</u> charge at trial. In fact, she agreed that giving the charge "sound[ed] reasonable". Consequently, this Court's review is for plain error.  See <u>United States v. McClatchy</u>, 249 F.3d 348, 359 (5th Cir. 2001) ("[I]f a defendant failed to object to the charge at trial, the charge will be reviewed for plain error, and the conviction will not be reversed unless an error 'seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceeding.'") (quoting <u>United States v. Calverley</u>, 37, F.3d 160, 164 (5th Cir. 1994)(en banc)).

The term "<u>Allen</u> charge" describes supplemental instructions to deadlocked juries "urging them to forgo differences and reach a unanimous verdict."  <u>United States v. Heath</u>, 970 F.2d 1397, 1406 (5th Cir. 1992).  Modified <u>Allen</u> charges are permissible, within the district court's broad discretion, where "the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial." <u>United States v. McClatchy</u>, 249 F.3d 348, 359 (5th Cir. 2001) (internal citation omitted).  The modified <u>Allen</u> charge given by the district court at Allard's trial is substantively the same as the charge found in the Fifth Circuit Pattern Jury Instructions. See Fifth Circuit Pattern Jury Instructions (Criminal) § 1.45 (2001).  Further, the instruction essentially mirrors <u>Allen</u> charges previously approved by this Court.  <u>See</u>, <u>e.g.</u>, <u>United States v. Winters</u>, 105 F.3d 200, 203-04 (5th Cir. 1994); <u>United States v.</u>

13

Nguyen, 28 F.3d 477, 484 & n.4 (5th Cir. 1994). This Circuit has consistently held that "the trial court 'is vested with broad discretion to evaluate whether an Allen charge is likely to coerce a jury into returning a verdict it would not otherwise return.'" Nguyen, 28 F.3d at 484 (quoting United States v. Gordon, 780 F.2d 1165, 1177 (5th Cir. 1986) (internal citations omitted)). Although Allard argues generally that the charge given was inappropriate, she has produced no argument or evidence indicating that the district court abused its discretion in giving the charge, or that the charge itself actually had a coercive effect. Consequently, Allard has failed to demonstrate that the district court erred in giving the Allen charge to her deadlocked jury. See id. (finding no plain error where the defendant acquiesced to the Allen charge given, and where the charge itself tracked the language of the Fifth Circuit Pattern Jury Instruction).

## III

For the reasons stated above, we find that the district court did not err in admitting testimony relating to Allard's polygraph examination, nor in giving the modified Allen charge to relieve the jury's deadlock. Consequently, the judgment of the district court is

AFFIRMED.

14