PD-1600-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/21/2015 11:24:21 AM
Accepted 12/21/2015 12:45:33 PM
ABEL ACOSTA
CLERK

THE STATE OF TEXAS §
§
§
§
§
§
v. §          **Cause No. PD-1600-15**
§
§
§
§
§
§
STEPHEN DEMOND ODOM, §
*Appellee* §



FILED IN
COURT OF CRIMINAL APPEALS

December 21, 2015

ABEL ACOSTA, CLERK

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IN THE
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS**

# REPLY IN OPPOSITION TO STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE NINTH COURT OF APPEALS JEFFERSON COUNTY

***ORAL ARGUMENT REQUESTED***

DAVID W. BARLOW
ATTORNEY AT LAW
EDISON PLAZA
350 PINE STREET, SUITE 315
BEAUMONT, TEXAS 77701
TELEPHONE: (409) 838-2168
FACSIMILE: (409) 838-3145
david.barlow@davidwbarlow.com
TEXAS BAR NO. 00793305

**IDENTIFICATION OF THE PARTIES**

Pursuant to Tex. R. App. Proc 68.4(a), a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

Appellee:                                Stephen D. Odom, #1911586
                                         French Robertson Unit
                                         12071 FM 3522
                                         Abilene, Texas 79601

Defense Attorneys on the Trial: Audwin Samuel and Sean Villery-Samuel
                                         1965 Park Street
                                         Beaumont, Texas 77701

Defense Attorney on the Appeal: David W. Barlow
                                         Edison Plaza
                                         350 Pine Street, Suite 315
                                         Beaumont, Texas 77701

Prosecutor on the Trial:                Lindsey Scott
                                         Jefferson County Courthouse
                                         1085 Pearl
                                         Beaumont, Texas 77701

Criminal District Attorney:             Robert J. "Bob" Wortham
                                         Jefferson County Courthouse
                                         1085 Pearl
                                         Beaumont, Texas 77701

Trial Judge Presiding:                  John B. Stevens, Jr.
                                         Jefferson County Courthouse
                                         1085 Pearl
                                         Beaumont, Texas 77701

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATE'S GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        **STATE'S GROUND FOR REVIEW NO. ONE:** The Court of Appeals (sic) opinion erroneously precludes the State from offering impeachment evidence under Tex. Rule Evid. (sic) 611(b) in all instances where the evidence consists of the defendant's failure to take a polygraph test.. 5

        **STATE'S GROUND FOR REVIEW NO. TWO:** The Court of Appeals (sic) opinion effectively erroneously renders any mention of a polygraph (even in instances where there was no polygraph exam) as error per se, even when the question is asked to correct a false impression and perjurous (sic) statement made by a defendant during trial.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## AUTHORITIES

**<u>CASES</u>**                                                               **<u>PAGE</u>**

*Cade v. State*, 2015 Tex. Crim. App. Unpub. LEXIS 156 2015)(not designated for publication) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . 13

*Castillo v. State,* 739 S.W.2d 280 (Tex. Crim. App.1987). . . . . . . . . . . . . . . . . . . . 6

*Nesbit v. State,* 227 S.W.3d 64 (Tex. Crim. App. 2007).. . . . . . . . . . . . . . . . . . . . . 6

*Nethery v. State,* 692 S.W.2d 686 (Tex. Crim. App.1985). . . . . . . . . . . . . . . . . 6, 13

*Nichols v. State,* 378 S.W.2d 335 (Tex. Crim. App. 1964).. . . . . . . . . . . . . . . . . 13

*Peterson v. State,* 157 Tex. Cr. R. 255, 247 S.W.2d 110 (1951). . . . . . . . . . . . . . . 7

*Tennard v. State,* 802 S.W.2d 678 (Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . . 6

*U.S. v. Allard,* 464 F.3d 529 (5th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

**STATEMENT REGARDING ORAL ARGUMENT**

The grounds for review herein advanced by the State of Texas are well settled in Texas jurisprudence. Oral argument will not be helpful to the Court. However, as the State of Texas has requested oral argument in its Petition, Odom hereby requests oral argument in response.



**THE STATE OF TEXAS** §
§
§
§
§
§
v. § **Cause No. PD-1600-15**
§
§
§
§
**STEPHEN DEMOND ODOM,** §
*Appellee* §

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IN THE
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS**

# REPLY IN OPPOSITION TO STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE NINTH COURT OF APPEALS JEFFERSON COUNTY

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

TO THE HONORABLE COURT OF APPEALS:

COMES NOW Stephen Demond Odom, Defendant in cause number 13-16301 in the Jefferson County Criminal District Court, John B. Stevens, Jr., Judge Presiding, and Appellant before the Ninth Court of Appeals, and respectfully submits this reply to the Court of Criminal Appeals in response to the Petition for Discretionary Review filed by the State of Texas herein.

1

**STATEMENT OF THE CASE**

Appellant was indicted by a Jefferson County grand jury in a multi-count indictment for the offense of injury to a child. Appellant plead not guilty to both counts, and trial was to a jury. Following the presentation of evidence, and after arguments of counsel and deliberations, the jury found Appellant guilty of count one of the indictment. After the presentation of punishment evidence, and after further arguments of counsel and deliberations, the jury assessed punishment at incarceration in the Texas Department of Criminal Justice for life.

**STATEMENT OF PROCEDURAL HISTORY**

After conviction in the trial court, Appellant perfected Notice of Appeal to the Ninth Court of Appeals. The Court found error, reversed the conviction and sentence, and remanded the cause to the trial court for re-trial. The State filed a motion for rehearing, which was overruled by the Court of Appeals. The State then filed its Petition for Discretionary Review with this Honorable Court.

## STATE'S GROUNDS FOR REVIEW

**GROUND FOR REVIEW NO. ONE:** The Court of Appeals (sic) opinion erroneously precludes the State from offering impeachment evidence under Tex. Rule Evid. (sic) 611(b) in all instances where the evidence consists of the defendant's failure to take a polygraph test.

**GROUND FOR REVIEW NO. TWO:** The Court of Appeals (sic) opinion effectively erroneously renders any mention of a polygraph (even in instances where there was no polygraph exam) as error per se, even when the question is asked to correct a false impression and perjurous (sic) statement made by a defendant during trial.

# ARGUMENT

**STATE'S GROUND FOR REVIEW NO. ONE:** The Court of Appeals (sic) opinion erroneously precludes the State from offering impeachment evidence under Tex. Rule Evid. (sic) 611(b) in all instances where the evidence consists of the defendant's failure to take a polygraph test.

**STATE'S GROUND FOR REVIEW NO. TWO:** The Court of Appeals (sic) opinion effectively erroneously renders any mention of a polygraph (even in instances where there was no polygraph exam) as error per se, even when the question is asked to correct a false impression and perjurous (sic) statement made by a defendant during trial.

The gravamen of the State's theory under which it asks this Honorable Court to exercise its discretion herein is based upon an erroneous, conclusory premise: the Odom lied during his trial. The trial below was to a jury. The jury was the fact finder, not the State of Texas. The veracity of Odom, just as any other witness, including those testifying for the State of Texas, was the purview of the jury. The jury is who decided who lied (if anyone), who did not lie, and whom to believe. However, the State would have this Honorable Court believe that its conclusory opinion that Odom lied was a fact, that the Ninth Court of Appeals should have known that it was a fact, and that, therefore, the appellate court erroneously held that the issue of whether Odom was "uncooperative" with law enforcement could not be impeached with polygraph evidence. Glaringly absent from the State's petition is any

5

support or authority for its argument.

The State contended before the Court of Appeals that the issue of a polygraph was not being offered by the State to show that Odom did not submit to a polygraph, but rather to impeach him by showing that he was uncooperative for not submitting to a polygraph. The appellate court held that there was a plethora of evidence before the jury already regarding the cooperation of Odom with law enforcement. The Court of Appeals held that the prejudicial effect of allowing polygraph testimony was immensely outweighed by any probative value, even if it was offered as impeachment evidence. The State argues in its petition that, in effect, it should have been allowed to impeach Odom with "truthful" information establishing Odom committed perjury. While the State is entitled to its own opinion, it is not entitled to its own facts. The jury determines the facts herein, not the State of Texas. The fallacy of the State's argument is its reliance on its own arbitrary conclusion to support its premise. It is simply bootstrapping its desired conclusion as the basis for its petition.

It has long been settled that the *existence and results* of a polygraph examination are inadmissible for <u>all</u> purposes in Texas, even if the State and the appellant agree to its admissibility. *Nesbit v. State,* 227 S.W.3d 64 (Tex. Crim. App. 2007); *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990); *Castillo v. State,* 739 S.W.2d 280, 293 (Tex. Crim. App.1987); *Nethery v. State,* 692 S.W.2d 686

6

(Tex. Crim. App.1985); *Peterson v. State,* 157 Tex. Cr. R. 255, 247 S.W.2d 110 (1951) (Emphasis added). The State simply ignores the fact that polygraph testimony is inadmissible for *all* purposes. Impeachment is a purpose. The record below shows the testimony regarding the polygraph. Appellant was testifying in his own behalf and was being cross examined by the prosecutor as reflected beginning at R.R. V-79, to-wit:

"THE STATE: Q. Once the police told you that this was child abuse, that someone had hurt Jakyra and that's what killed her, were you interested in finding out who had done that?

APPELLANT: A. Of course. Yes, ma'am.

Q. And you became aware that they suspected you, right?

A. Yes, ma'am.

Q. They told you that, didn't they?

A. Yes, ma'am.

Q. And were you interested in helping to eliminate yourself as a suspect?

A. Was I interested?

7

Q. Yeah. Did you want to eliminate yourself as a suspect?

A. Yes, ma'am.

Q. But you did at some point become uncooperative with the police? Do you dispute that?

A. No, ma'am. I didn't become uncooperative. I did everything they asked me to. I was not never uncooperative.

Q. At some point, did you stop returning their calls?

A. No, I never stopped returning their calls. I talked to Lieutenant Curl and explained to him what my lawyer told me to do and that my lawyer would get in touch with me.

THE COURT: You-all come on up here."

The trial court then held that the allegation that Appellant had refused to submit to a polygraph examination "even before he hired an attorney" would be admissible because, according to the trial court, Appellant "opened his own door there." The

8

trial court attempted to justify its clearly erroneous ruling as reflected at R.R. V-81, to-wit:

"THE COURT: It's allowable at this stage. He volunteered that statement (that Appellant did everything they asked me to). I think he put himself into it. He's opened his own door there. I wasn't going to let it in, but I'm certainly not going to let him volunteer statements after he answered the question that misleads the jury. I know you worked on that before but he can't volunteer an additional statement; and that opened the door, in all fairness, to everything. I don't like this whole subject matter, but he can't make a statement if it's not an accurate one. He had given an answer, and then he went further.

. . . .

The jury can't be mislead. The whole thing is the rules of evidence are pursuing the truth; but when he makes that statement and it's proffered that that contradicts what he just said, then in all fairness, the jury is entitled to know what it is. I don't like polygraphs but, nonetheless, when

9

he makes - - he answered the question. It still didn't open the door. It was his next statement."

Appellant objected to its admission based upon Rule 403, Tex. R. Evid. The trial court overruled Appellant's objection stating that:

"Well, if they asked him to take a polygraph that I wouldn't have otherwise introduced or allowed the admission of, when he makes that last statement, that is not a fair, accurate, truthful, honest statement; and he volunteered that. State has an opportunity to respond"

The trial court further attempted to justify its erroneous introduction of the existence as reflected at R.R. V-83, to-wit:

"THE COURT: Now, let me add one other guiding principle that this Court looks at and it's found under Article 101 of the Texas Rules of Evidence or under 102. For purpose and construction of the rules, the rules are construed to secure fairness, elimination of unjustifiable expense and delay, promotion of growth and development of the law of evidence - - and here what I find to me the most important - - to the end that the truth may be

10

ascertained. Well, that's not what we're doing if we don't finish that thought that's been put out there from a volunteered statement that after his - - again, he completed his answer, and then he ventured into the uncharted water on his own of that statement. I don't like it.

. . . .

We're not going to end that because, truly, as we all agree, it is apparently not factual and not a truthful statement that's before the jury. All right. And it wasn't - - again, because he volunteered the statement, I think the State, in all fairness under the rules, is allowed to refute, if they can directly refute that. So, your objection is overruled on that regard."

At trial, Odom was then forced to defend himself against the inaccurate, untrue suggestion that he refused to submit to a polygraph as shown beginning at R.R. V-84, to-wit:

"THE STATE Q. Mr. Odom, you said you did everything that the police asked you to do. That's not true, is it? It's a yes or no question.

11

APPELLANT A.  Yes, ma'am.

Q.    Because they asked you to submit to a polygraph examination, didn't they?

A.    Yes, ma'am.

Q.    And you refused to do that, didn't you?

A.    I didn't refuse.

Q.    You didn't?

A.    I did not refuse.

Q.    Well, did you submit to one?

A.    I didn't submit to one because they supposedly had been getting with my lawyer or over to my lawyer and setting up an appointment with my lawyer.  I was doing what my lawyer asked you to do.

Q.    Really? You told them you'd take a polygraph when you left; but you never would come back and take one, would you?

A.    I did tell them that I would take one.

Q.    Yeah, you told them that?

A.    Yeah, but after I talked - -

Q. You didn't show up to take it, did you?

A. They never told me a definite day to show up.

Q. Didn't you make an appointment and you didn't show up and they kept trying to call you?

A. No, ma'am, I didn't.

. . . .

Q. The point is you never did show up and take one, did you?

A. It was never a point in time to take one.

Q. So, that is no, right?

A. No, ma'am."

The Ninth Court of Appeals correct held that this Honorable Court has *consistently* held that both polygraph results and questions regarding whether a witness took a polygraph are inadmissible at trial, citing opinions of this Court from 1951 until 2007. The State incorrectly states in its petition that the Court of Appeals relied on this Honorable Court's opinion in *Nethery v. State*, 692 S.W.2d 686 (Tex. Crim. App. 1985). While *Nethery* was one of the over 18 cases the Court of Appeals cited in its opinion, it was not what the appellate court primarily relied upon in its opinion. The court's opinion relies heavily upon this Honorable Court's opinion in

*Nichols v. State*, 378 S.W.2d 335 (Tex. Crim. App. 1964). This Honorable Court has addressed issues similar to *Nichols* most recently as 2015. *Cade v. State*, 2015 Tex. Crim. App. Unpub. LEXIS 156 2015)(not designated for publication). *Nichols* has not been disavowed by this Honorable Court. The State's petition presents no argument nor reason as to why the Court should do so now.

In a desperate attempt to try to find some scintilla of support for its premise herein, the State directs this Honorable Court's attention to *U.S. v. Allard*, 464 F.3d 529 (5th Cir. 2006). The only things distinguishing the cause *sub judice* from *Allard* are the facts and the law. The facts herein are not the facts in *Allard, supra*. The reasons for the admissibility of a polygraph under federal law are based on facts severely different from the facts in the case at bar. The law herein is not the law in *Allard, supra*. The United States Court of Appeals for the Fifth Circuit discusses and applies the federal rules of evidence in *Allard*. The Texas rules of evidence are applicable herein, not federal rules.

It is overwhelmingly obvious that a polygraph examination was never definitively scheduled, which is why Odom never submitted to one. Therefore, it is clearly disputed whether Odom committed perjury as the State would have this Honorable Court believe. The State's argument as to why this Court should grant review embarrassingly lacks any factual or legal reasons for this Honorable Court to

14

do so. Rule 66.3, Tex. R. App. Proc. It is beyond dispute the Ninth Court of Appeals carefully and meticulously considered its opinion, as the Court took over one year after submission to issue its opinion. For these reasons, the State's Petition for Discretionary Review clearly must be denied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Odom urges this Honorable Court to deny the State's Petition for Discretionary Review from the Ninth Court of Appeals.

Respectfully submitted,

/s/ David W. Barlow
DAVID W. BARLOW
ATTORNEY AT LAW
Edison Plaza
350 Pine Street, Suite 315
Beaumont, Texas 77701
Telephone: (409) 838-2168
Facsimile: (409) 838-3145
david.barlow@davidwbarlow.com
Texas State Bar No. 00793305

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Reply in Opposition to State's Petition for Discretionary Review From the Ninth Court of Appeals was served upon the Hon. Robert J. "Bob" Wortham, Jefferson County Criminal District Attorney, Jefferson County Courthouse, 1085 Pearl, Suite 300, Beaumont, Texas, 77701, thompson@co.jefferson.tx.us, attorney for the State of Texas, Petitioner, and upon the Hon. Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas, 78711-3046, information@spa.texas.gov, by electronic service via www.efile.txourts.gov, on this the 21st day of December, 2015.

/s/ David W. Barlow
DAVID W. BARLOW

17

# APPENDIX A

Selected Testimony from Cross Examination
of Stephen Demond Odom by
State of Texas

A. Yes, ma'am.

Q. You went in for your second interview with the detective, and your attorney was asking you about this. At some point, I guess you decided you wanted an attorney; is that right?

A. Yes, ma'am.

Q. But you really -- you became uncooperative with the police before you had hired an attorney in this case, hadn't you?

A. Is that a question?

Q. Yeah.

A. No, ma'am.

Q. I mean, weren't there things the police wanted you to do that you were not willing to do, even when you did not have an attorney?

A. No, ma'am.

Q. That's not true? Are you saying you cooperated with them and did everything that they asked of you?

A. I did whatever they asked me to do.

MR. A. SAMUEL: Your Honor, may we approach?

THE COURT: Come on up.

(Bench Discussion Outside Hearing of the Jury)

MR. A. SAMUEL: She's trying to lead him to the point about him not giving a polygraph and was not cooperative. He stated that he cooperated with the police, and

we object to anything alluding to the fact that he was not cooperating because he refused to take a polygraph.

MRS. SCOTT: Judge, I just believe that he's opened the door for this because he lead him down the line of questioning saying that the only way he did not cooperate with the police, the only way --

THE COURT: It's not coming in yet. It's not going in yet.

MRS. SCOTT: Okay.

THE COURT: Go to something else.

(Bench Discussion Concluded)

BY MRS. SCOTT:

Q. Once the police told you that this was child abuse, that someone had hurt Jakyra and that's what killed her, were you interested in finding out who had done that?

A. Of course. Yes, ma'am.

Q. And you became aware that they suspected you, right?

A. Yes, ma'am.

Q. They told you that, didn't they?

A. Yes, ma'am.

Q. And were you interested in helping to eliminate yourself as a suspect?

A. Was I interested?

Q. Yeah. Did you want to eliminate yourself as a suspect?

A.   Yes, ma'am.

Q.   But you did at some point become uncooperative with the police?  Do you dispute that?

A.   No, ma'am, I didn't become uncooperative.  I did everything they asked me to do.  I was not never uncooperative.

Q.   At some point, did you stop returning their calls?

A.   No, I never stopped returning their calls.  I talked to Lieutenant Curl and explained to him what my lawyer told me to do and that my lawyer would get in touch with him.

THE COURT:  You-all come on up here.

(Bench Discussion Outside Hearing of the Jury)

THE COURT:  All right.  A question was asked, "But you did at some point become uncooperative with the police.  Do you dispute that?"

"No, ma'am I didn't become uncooperative."  He answered the question.  He then volunteered, "I did everything that they asked me to do."  So, is this part of what you're trying to get in?

MRS. SCOTT:  Well --

THE COURT:  Is that what you're saying this goes to?

MRS. SCOTT:  Yes.

THE COURT:  All right.  He volunteered that statement.  It wasn't part of the answer.  He answered it.  He added that statement.  Are you saying that there is something

that contradicts what he just said?

MRS. SCOTT: Yes.

THE COURT: What is that?

MRS. SCOTT: He refused to submit to a polygraph examination even before he hired an attorney.

THE COURT: It's allowable at this stage. He volunteered that statement. I think he put himself into it. He's opened his own door there. I wasn't going to let it in, but I'm certainly not going to let him volunteer statements after he answered the question that misleads this jury. I know you worked on that before but he can't volunteer an additional statement; and that opens the door, in all fairness, to everything. I don't like this whole subject matter, but he can't make a statement if it's not an accurate one. He had given an answer, and then he went further.

MR. S. SAMUEL: I understand that.

MRS. SCOTT: So, I can get into it now?

THE COURT: The jury can't be mislead. The whole thing is the rules of evidence are pursuing the truth; but when he makes that statement and it's proffered that that contradicts what he just said, then in all fairness, the jury is entitled to know what it is. I don't like polygraphs but, nonetheless, when he makes -- he answered the question. It still didn't open the door. It was his next statement.

MR. S. SAMUEL: Secondary statement. With

that being said, still for the record, I would make a 403 objection on the grounds that any probative value is substantially outweighed by the prejudicial effect, as well as misleading.

THE COURT: Well, Rule 403 states that relevant evidence may be excluded if it's prejudicial or is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Now, this Court has considered polygraph issues -- that is, someone not taking a polygraph or taking a polygraph or the results thereof -- to be dangerous ground for presentation because this Court's own experience with polygraphs is that it is not a perfect science. That's why it's not allowed to be entered into or else we would do away with the jury. We would just do polygraphs. This Court is not going to be the catalyst for that road to be taken.

However, again, as I reviewed the record, and I sustained the objection of not allowing it in the first place but when a statement is made by -- again, I would note the question, "But you did at some point become uncooperative with the police. Do you dispute that?" That was a yes or no. And he answered, "No, ma'am, I didn't become uncooperative." He answered the question; and then he volunteered on his own next statement, "I did everything they asked me to do."

Well, if they asked him to take a polygraph

that I wouldn't have otherwise introduced or allowed the admission of, when he makes that last statement, that is not a fair, accurate, truthful, honest statement; and he volunteered that. State has an opportunity to refute that.

MR. S. SAMUEL: So, your ruling is overruled, Your Honor?

THE COURT: You're making an objection of 403?

MR. S. SAMUEL: Correct.

THE COURT: I am finding that under these circumstances, based upon the balancing test under 403, that this information under these particular circumstances are not information that he refused to take the polygraph, is not excluded under these, as its probative value is not substantially outweighed by the danger of unfair prejudice.

Now, let me add one other guiding principle that this Court looks at and it's found under Article 101 of the Texas Rules of Evidence or under 102. For purpose and construction of the rules, the rules are construed to secure fairness, elimination of unjustifiable expense and delay, promotion of growth and development of the law of evidence -- and here what I find to be the most important -- to the end that the truth may be ascertained. Well, that's not what we're doing if we don't finish that thought that's been put out there from a volunteered statement that after his -- again, he completed his answer, and then he ventured into the unchartered

water on his own of that statement. I don't like it.

MRS. SCOTT: I know.

THE COURT: I don't like all of that but again --

MR. S. SAMUEL: Just to be clear, it's overruled?

THE COURT: We're not going to end that because, truly, as we all agree, it is apparently not factual and not a truthful statement that's before the jury. All right. And it wasn't -- again, because he volunteered the statement, I think the State, in all fairness under the rules, is allowed to refute, if they can directly refute that. So, your objection is overruled on that regard.

(Bench Discussion Concluded)

THE COURT: Hold on. You may move forward.

BY MRS. SCOTT:

Q. Mr. Odom, you said you did everything that the police asked you to do. That's not true, is it? It's a yes or no question.

A. Yes, ma'am.

Q. Because they asked you to submit to a polygraph examination, didn't they?

A. Yes, ma'am.

Q. And you refused to do that, didn't you?

A. I didn't refuse.

Q. You didn't?

A. I did not refuse.

Q. Well, did you submit to one?

A. I didn't submit to one because they supposedly had been getting with my lawyer or over to my lawyer and setting up an appointment with my lawyer. I was doing what my lawyer asked you to do.

Q. Really? You told them you'd take a polygraph when you left; but you never would come back and take one, would you?

A. I did tell them that I would take one.

Q. Yeah, you told them that?

A. Yeah, but after I talked --

Q. You didn't show up to take it, did you?

A. They never told me a definite day to show up.

Q. Didn't you make an appointment and you didn't show up and they kept trying to call you?

A. No, ma'am, I didn't.

THE COURT: Hold on. One at a time. She's really good, but she can't take both people speaking over each other. She gets to ask the question and then you have a fair opportunity to answer. Don't step anybody speaking. Restate your question.

MR. A. SAMUEL: Your Honor, I object. The question was asked, and it was answered. I also object that

counsel is being argumentative.

THE COURT: Overruled. I'll allow you, of course, to renew your objection. Let's move through this point. Go forward.

BY MRS. SCOTT:

Q. The point is you never did show up and take one, did you?

A. It was never a point in time to take one.

Q. So, that is no, right?

A. No, ma'am.

Q. Mr. Odom, did you ever, when you were taking care of, Jakyra abuse any drugs or take any drugs?

A. Yes, ma'am.

Q. What drugs would you take?

A. I smoked marijuana.

Q. Did you ever do anything else?

A. No, ma'am.

Q. Did you ever, while you were taking care of Jakyra, abuse PCP?

A. No, ma'am.

Q. Benzodiazepines?

A. No, ma'am.

Q. Or ecstasy?

A. No, ma'am.

Q. Alcohol?

# APPENDIX B

Selected Testimony from Re-Direct Examination
of Stephen Demond Odom by
Odom's Trial Counsel

Q.    Did you ever strike Jakyra?

A.    No, sir.

Q.    Did you ever see any injuries that would lead you to believe someone had struck Jakyra?

A.    No, sir.

Q.    When you met with Detective Curl and he began to question you, he asked you to take a polygraph?

A.    He asked me would I take one.

Q.    And your response was?

A.    Yes, I would.

Q.    And to your knowledge, is a polygraph a perfect instrument?

A.    From what my lawyer told me, no.

Q.    But yet and still, you were willing to take it?

A.    Yeah.

Q.    But they never gave you a date to come take it?

A.    No, they never gave me a date.

Q.    Now, there was some questions about you smoking marijuana.  Did you ever smoke marijuana in the presence of Jakyra?

A.    Not in the presence, but I have.

Q.    But not in her presence?

A.    No, sir.

Q.    At any time, did you smoke marijuana in the same room with her?