FILED
United States Court of Appeals
Tenth Circuit

December 29, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL PHILLIP TENORIO,

Defendant - Appellant.

No. 15-2037

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:13-CR-03145-JCH-1)**

---

Samuel L. Winder (Jerry A. Walz with him on the briefs), Walz and Associates, P.C., Albuquerque, New Mexico, for Appellant.

Novaline D. Wilson, Assistant United States Attorney (Damon P. Martinez, United States Attorney, and Kyle T. Nayback, Assistant United States Attorney, with her on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **MATHESON**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

During Daniel Tenorio's jury trial, the district court permitted the

government to cross-examine Tenorio regarding whether he took a polygraph

examination after he testified his confession was coerced. Tenorio challenges the line of questioning, contending the district court abused its discretion in allowing examination regarding the polygraph test. He also claims that the district court's limiting instruction about the polygraph test to the jury was improper.

We conclude that under established precedent Tenorio opened the door to evidence regarding his polygraph examination by claiming his confession was coerced. In those circumstances, the court can allow limited examination about the facts surrounding a polygraph test to rebut claims of coercion. We also find the district court properly instructed the jurors to consider polygraph evidence only as explanation of the government's interrogation and not the guilt of the defendant.

We AFFIRM the conviction.

## I. Background

The Bureau of Indian Affairs began investigating Daniel Tenorio based on sexual abuse allegations by Tenorio's sixteen-year-old niece. The niece claimed that Tenorio touched her intimately, and frequently made unwanted sexual comments to her. Special Agent Travis LeBeaux interviewed the niece, two of her sisters, and her nephew.

Agent LeBeaux later interviewed Tenorio, who denied the accusations. Agent LeBeaux asked him to take a polygraph test, and Tenorio agreed, saying he had nothing to hide. After reading and signing consent and advice of rights

forms, Tenorio took the test administered by Agent Jennifer Sullivan, an FBI polygrapher.

Based on the results of the polygraph test, Agent Sullivan suspected Tenorio was deceptive. She followed-up with confrontational questions, for example by informing him that he was not being truthful and telling him to "man up." Tenorio then confessed and wrote an apology letter to the victim. He wrote such things as, "I should not have grabbed her breast it was wrong," and "I should not have grabbed her ass."

Tenorio was indicted on two counts of knowingly engaging in sexual contact in violation of 18 U.S.C. §§ 1153, 2244(a)(1), and 2246(3). He moved to suppress his confession as involuntary, which the district court denied. Prior to trial, the government filed a motion *in limine* to permit testimony related to the polygraph test "in responding to any claim Tenorio [might make] that his confession was coerced or involuntary, or that the United States' investigation was inadequate." R., Vol. I at 69. In response, Tenorio moved to prevent admission of the test and results.

In reserving a final ruling on the motion, the district court warned that testimony regarding the polygraph test would likely be overly prejudicial and therefore inadmissible, but that it would revisit the ruling "depending on what evidence [Tenorio] elicits during the course of his questioning about the confession." *Id.* at 159.

During the trial, Tenorio's attorney asked about the apology letter. Tenorio repeatedly claimed that he only wrote down what the FBI agent told him to write. He also claimed that he could not understand why the agent did not believe his innocence. For example, he said he was distraught during the interview, "[b]ecause the way she [the polygrapher] was coming at me and—see, how come she don't believe me when I was telling her that [I didn't do it]?" Supp. R., Vol. I at 283.

In response to this testimony, the government requested that it be permitted to cross-examine Tenorio about taking a polygraph exam and failing it. The district court determined that Tenorio opened the door to this questioning, and allowed evidence of the voluntary polygraph but not the results. The court said, "the jury will be grossly misled if they are allowed to rest on the directive of Mr. Tenorio that he could not understand why Ms. Sullivan continued to tell him to tell the truth and repeatedly said she thought he was lying." Supp. R., Vol. I at 310. When Tenorio's counsel asked what details surrounding the polygraph examination would be admitted, the court clarified the purpose of the evidence, which was to explain Agent Sullivan's actions: "I'm going to allow them to offer testimony that he voluntarily took the polygraph test and that was the basis for Agent Sullivan's challenge to his credibility and refusal to believe what he said thereafter." *Id.* at 315.

During Tenorio's cross-examination, the government highlighted that Tenorio claimed a coerced confession, but that the confession occurred in the context of a voluntary polygraph examination:

> Q. Your story is that Agent Sullivan was yelling at you, right?
> A. Yes, sir.
> Q. That she forced you what to say [sic] and what to write. That's your testimony today, isn't it.
> A. Yes, sir.
> Q. But that story isn't true, Mr. Tenorio, is it? It's not true, is it?
> A. It's true. Because I was there, and she was questioning me, so I told her the truth.
> Q. Special Agent Sullivan of the FBI administered a polygraph examination that you took voluntarily. That's true, isn't it?
> A. What Trevor (sic) told me, Officer Trevor said he wants to take me to take the test . . . . Trevor was the one that set that down. "I can take you to take a polygraph test." That was in San Felipe that he asked me, when he questioned me. And I told him, "I don't know what's a polygraph test." I wasn't the one that said it. He said it.
> Q. You told Special Agent LeBeaux that you didn't know what a polygraph test was?
> A. Yes, sir.
> Q. And you, you went and agreed to take it, correct?
> A. Yes, sir. Because I told him that I don't have – I didn't do nothing. That's what I told him.
> Q. Yes. You wanted to clear your name?
> [Bench conference.]
> A. Yes, sir.
> Q. And that's why you consented to interview with polygraph; is that right?
> A. Yes, sir.

Supp. R., Vol. I at 320–22.

At the close of trial, the district court gave a limiting instruction regarding the polygraph examination:

> The defendant testified he did not know why Agents Sullivan and LeBeaux continued to question him after a certain point in time, and he has referred to a polygraph examination. Federal law does not permit you to consider polygraph examinations, and it was admitted only to explain the action of the agents. I am going to instruct you you are not to speculate or take into consideration anything regarding the polygraph examination or its potential results in reference to the guilt or innocence of the defendant or in reference to whether or not he did or did not commit the acts charged in the indictment.

R., Vol. I at 200.

The jury convicted Tenorio of both counts in the indictment. Tenorio filed a motion for acquittal or a new trial. He argued that the jury instruction regarding the polygraph test would lead a reasonable juror to infer that Tenorio had failed the test, and therefore the court's mention of the test was improper. The court denied the motion because the defendant would have misled the jury if the fact of a lie detector were not mentioned and the limiting instruction properly informed the jury how to consider the testimony.

## II. Analysis

Tenorio contends that the district court admitted evidence relating to the polygraph examination in violation of Federal Rule of Evidence 403: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Specifically, he argues the district

-6-

court did not weigh the prejudicial effect of the evidence. "We review a district court's decision to admit evidence for an abuse of discretion and will 'reverse a decision only if it is manifestly erroneous.'" *United States v. Hood*, 774 F.3d 638, 644 (10th Cir. 2014) (quoting *United States v. Irving*, 665 F.3d 1184, 1210 (10th Cir. 2011)). We give district courts considerable discretion in performing the Rule 403 balancing test, because "district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues . . . ." *United States v. Cerno*, 529 F.3d 926, 935–36 (10th Cir. 2008).

The admission of polygraph evidence is carefully circumscribed. Prior to 1997, we had a per se rule that "polygraphs are not admissible to show that one is truthful." *United States v. Hall*, 805 F.2d 1410, 1416 (10th Cir. 1986). But after the Supreme Court developed new rules governing the admissibility of expert testimony beginning in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), we concluded our per se rule was untenable. Instead, we determined where a polygraph examination is treated as scientific evidence, we must subject it to Federal Rule of Evidence 702, which governs the admission of expert testimony. *United States v. Call*, 129 F.3d 1402, 1404–05 (10th Cir. 1997). *See also United States v. Allard*, 464 F.3d 529, 533 (5th Cir. 2006).

But where polygraph evidence is not offered as scientific evidence, neither Rule 702 nor a per se rule against admissibility applies. *See Hall*, 805 F.2d at 1416–17 (acknowledging a per se ban against polygraph evidence as proof of

truthfulness, but allowing such evidence to explain the detective's actions). The circuits have uniformly held, before and after *Daubert*, that when the defendant opens the door to polygraph evidence, such as attacking the nature of a criminal investigation or asserting that testimony was coerced, polygraph evidence is admissible rebuttal evidence subject to Rule 403's probative value and prejudicial effect considerations. *See United States v. Blake*, 571 F.3d 331, 346 (4th Cir. 2009) ("Polygraph results are generally inadmissible. However, testimony concerning a polygraph examination is admissible where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced." (citations and internal quotation marks omitted)); *Allard*, 464 F.3d at 533 (rejecting that Rule 702 applies where polygraph evidence provides a rebuttal account of the facts and circumstances surrounding a confession); *United States v. Johnson*, 816 F.2d 918, 923 (3d Cir. 1987) ("[C]ase law shows that evidence concerning a polygraph examination may be introduced to rebut an assertion of coercion of a confession . . . ."); *United States v. Kampiles*, 609 F.2d 1233 (7th Cir. 1979); *Tyler v. United States*, 193 F.2d 24, 31 (D.C. Cir. 1951).

*Hall* decides this case. As in *Hall*, Tenorio opened the door for questioning about his polygraph test by testifying his confession was coerced. In that case, we allowed the government to reference polygraph tests (and results) for the limited purpose of rebutting the defendant's challenge to investigation techniques.

Hall had offered a description of a bank-robbery suspect, but then failed two polygraph tests. When Hall subsequently changed his description, the investigator did not launch a full-scale investigation because she thought Hall was lying. The district court, as here, had originally decided that evidence of the polygraph exams was overly prejudicial under Rule 403, but warned defendant's counsel that if counsel continued to attack the quality of the investigation, evidence of the polygraphs would be admissible. Sure enough, defendant's counsel asked what the investigator did with Hall's second suspect description, and so the court allowed evidence not only that Hall had taken two polygraph tests, but that he had failed both tests. Tenorio's cross-examination is, if anything, a narrower application of the rule in *Hall*.[1]

Given *Hall*, Tenorio concedes "admission of the results of polygraph examinations," is proper when "the nature and extent of the criminal investigation is called into question" and when "the voluntariness of a confession is challenged." Appellant Br. at 13–14. He also admits that he questioned the quality of the government's investigation and testified that he was bullied into confessing. *Id.* at 14.

---

[1] Tenorio argues that *Hall* does not apply because *Call* has superceded it. In *Call*, we said that a per se rule against polygraph results, where the results are admitted for the purpose of showing that one is truthful, was inappropriate in light of *Daubert*. 129 F.3d at 1404–05. That is, in *Call* we lightened the evidentiary requirement. This clarification, however, is tangential. Here, the government does not seek to admit polygraph evidence to show that one is truthful, so neither the per se ban nor the *Daubert* revision is relevant.

He nevertheless asserts that admission was improper because the real reason the district court admitted the evidence was to allow the government to attack Tenorio's credibility. To be sure, where rebuttal-value is mere pretext, but the party in fact seeks to admit polygraph evidence as an indicator of honesty, that party must satisfy the criteria for admission under *Daubert*. Tenorio seems to argue that because the polygraph evidence undermined his testimony regarding coercion, it was improperly admitted. His argument misses the point.

When a defendant says he was coerced but only tells half the story, rebuttal evidence necessarily impacts the credibility of that defendant's testimony. Thus, the distinction Tenorio seeks to draw would prohibit polygraph evidence in every instance, at least without a *Daubert* hearing. Case law and basic logic reject the notion that all such rebuttal evidence must be either rejected or presented by an expert. *See, e.g., Blake*, 571 F.3d at 348 (admitting polygraph evidence without a *Daubert* hearing to rebut a claim of coercion, because allowing only one side of the story would be illogical).

Although Tenorio opened the door to the evidence, we must still inquire whether it should be excluded as unfairly prejudicial pursuant to Rule 403. We have little difficulty concluding that the district court acted within its broad discretion here. In response to the motions *in limine*, the district court weighed the prejudicial and probative value of the polygraph evidence. The court decided at that time that the prejudicial effect of testimony would outweigh its probative

value.  The court warned, however, that it would revisit the ruling depending on what Tenorio said about his confession.

It is not true, then, that the district court failed to consider prejudicial effect of the testimony.  The prejudicial value of the evidence remained constant when Tenorio took the stand.  The court accurately noted, however, that Tenorio's presentation of half of the story gave the government a strong interest in completing the other half.[2]  Even so, the court did not allow evidence regarding results and instructed the jury to consider the polygraph test only in explaining the agents' actions.  Cross-examination was brief and of limited scope.  Further, any prejudice can hardly be "unfair" when Tenorio, who was explicitly warned about this possibility, went on to argue that he was coerced anyway.  *See Kampiles*, 609 F.2d at 1244 ("It would have been unfair to allow defendant to present his account of his admissions, based upon the alleged threats by [the agent], without allowing the Government to demonstrate the extent to which failure of the polygraph precipitated the confession.").

Finally, Tenorio's assertion that the district court improperly instructed the jury is meritless.  We review jury instructions de novo "to determine whether, as a whole, the instructions correctly state the governing law and provide the jury

---

[2]  Supp. R., Vol. I at 310 ("I think the jury will be grossly misled if they are allowed to rest on the directive of Mr. Tenorio that he could not understand why Ms. Sullivan continued to tell him to tell the truth and repeatedly said she thought he was lying.").

with an ample understanding of the issues and applicable standards." *United States v. Dowlin*, 408 F.3d 647, 667 (10th Cir. 2005). Not only do the jury instructions mirror those we approved in *Hall*,[3] they were, if anything, beneficial to Tenorio. The court told the jury "not to speculate or take into consideration anything regarding the polygraph examination or its results in reference to the guilt or innocence of the defendant or in reference to whether or not he did or did not commit the acts charged in the indictment." R., Vol. I at 200. This correctly states the law and provides the jury with an understanding of the issues.

## III. Conclusion

For the foregoing reasons, Tenorio's conviction is AFFIRMED.

---

[3]

> Now, I'm going to instruct you that you are not to speculate . . . that you are not to take into consideration and you are not to speculate as to what those polygraph examinations or the results of those were in reference to the guilt or innocence of the defendant in reference to whether or not he did or did not commit the acts that are charged in the indictment.

*Hall*, 805 F.2d at 1415–16.